OPINION
{¶ 1} Defendant-Appellant, Jose Villarreal, appeals his conviction in the Butler County Court of Common Pleas for child endangering.
 {¶ 2} N.E. was the 11-month-old child victim in this case. When the facts giving rise to this case occurred, appellant was the live-in boyfriend of Jill E., N.E.'s mother. Appellant lived in a second-floor apartment with Jill, N.E., and Lilly, Jill's three-year-old daughter. The first floor was occupied by appellant's mother, Yolanda Villarreal ("Yolanda"), and his siblings.
 {¶ 3} On the morning of Monday March 3, 2003, Jill awoke and began preparing for a new job she was beginning that day. While getting ready, she briefly checked on N.E. She walked over to where he lay sleeping, noticed nothing unusual, and proceeded to cover him with his blanket. At approximately 7:30 a.m., Jill's mother arrived and drove Jill to work.
 {¶ 4} Appellant awoke around 9:30 a.m. and spent the morning and afternoon as the sole caretaker of N.E. and Lilly. At approximately 2:00 or 3:00 p.m., Jill received a call notifying her that N.E. was injured. She immediately returned home where she met appellant outside the apartment. Appellant told Jill that N.E. had fallen, and Jill proceeded to take N.E. to the emergency room.
 {¶ 5} At the hospital, emergency medical personnel discovered that N.E.'s leg was broken; specifically, his femur bone had suffered a complete break. Bruising was discovered on N.E.'s face, neck, chest, and most significantly, on his buttocks. Because N.E.'s injuries were not consistent with a simple fall, hospital personnel became suspicious, and the local authorities began to investigate for possible child abuse.
 {¶ 6} During the investigation, appellant was interviewed and gave a statement to Detective Mark Henson of the Hamilton Police Department. In his statement, appellant gave his version of what occurred on the morning and afternoon of Monday, March 3, 2003. He claims that he fed the children in the morning, then began doing the dishes. Lilly then told him she wanted to take a bath, so appellant decided to bathe the children. It was then, appellant claimed, that he first noticed bruises on N.E.'s buttocks, while undressing and bathing him.
 {¶ 7} Appellant further stated to Detective Henson that while bathing N.E., Yolanda called to him from the first floor apartment. He briefly left N.E. in the tub and went to the top of the stairs to speak to Yolanda, who remained on the first floor. After a short conversation, appellant claims that Yolanda left and that he began to return to N.E. and the bath. While returning to N.E., appellant observed him get up and attempt to get out of the tub. N.E. fell before appellant could reach him, but after the fall, N.E. did not appear to be in pain. Two or three hours later, while changing N.E.'s diaper, appellant noticed N.E.'s right leg was not moving and looked "funny." Jill was then notified and N.E. was taken to the emergency room.
 {¶ 8} When the Hamilton police concluded their investigation, appellant was indicted for child endangering. On November 24 and 25, 2003, the case against him was tried before a jury. The state's case against appellant was primarily circumstantial and consisted of the following: Child care workers from N.E.'s day care testified that other than a small bruise on N.E.'s face, they did not observe anything unusual while changing N.E.'s diaper, or anything unusual with his leg on Friday, February 28, 2003. Jill's mother, Paula E., testified that on Sunday, March 2, 2003, N.E. was at her home for a birthday party. She observed nothing unusual with N.E. during the party. Another family member also present at the party confirmed Paula's testimony that N.E. appeared to be normal and not in pain.
 {¶ 9} Persons who observed N.E. at the emergency room testified, in conjunction with photographs submitted by the state, that N.E. had numerous bruises on his face, neck, and chest when he was brought in on the afternoon of March 3, 2003.
 {¶ 10} Medical experts also testified. Dr. Longevin and Dr. Duma both testified that they suspected child abuse. Dr. Duma testified that the femur is the largest bone in the body. In his opinion, a significant amount of force would be required to break it, and he did not believe the complete break to N.E.'s femur was caused by a fall from a tub. He also believed the break occurred sometime between 5:00 a.m. and 5:00 p.m. on Monday, March 3, 2003, and that once the break occurred, N.E. would not have put any weight on his leg.
 {¶ 11} Appellant's defense consisted primarily of the testimony of Yolanda and Jill. Yolanda's testimony was not completely consistent with appellant's version of what happened when she conversed with appellant on the day of N.E.'s injuries. She testified that she heard a fall and a baby crying while she was speaking with appellant. In his statement to Detective Henson, appellant indicated the fall from the tub occurredafter the conversation with his mother concluded. Jill testified that she never saw appellant abuse her children.
 {¶ 12} At the conclusion of appellant's trial, the jury found him guilty of child endangering by recklessly causing serious physical injury to N.E. This appeal followed, in which appellant raises three assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The trial court erred in overruling defendant-appellant's criminal rule 29 motion."
 {¶ 15} In his first assignment of error, appellant argues the trial court erred in overruling his Crim.R. 29 motion at the end of the state's case-in-chief, and at the close of the trial.
 {¶ 16} When reviewing a trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test that it would in reviewing a challenge based upon sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511, 525. Evidence is sufficient to support a conviction if any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 17} Whether evidence is sufficient is a question of law, the resolution of which does not permit this court to weigh the evidence.State v. Robinson (1955), 162 Ohio St. 486. Rather, we will reverse a conviction for insufficiency of evidence only if each essential element of the crime charged is not supported by some competent, credible evidence. See State v. Caton (2000), 137 Ohio App.3d 742, 750.
 {¶ 18} Pursuant to R.C. 2919.22(B)(1), appellant was convicted of the crime of child endangering, with a serious physical harm specification. R.C. 2919.22(B)(1) prohibits any person, with a culpable mental state of recklessness, from abusing a child under the age of 18. An abused child is one who suffers a physical or mental injury that harms the child's health or welfare. R.C. 2151.03.1. Thus, at trial, the state was required to prove that appellant recklessly caused serious physical harm to N.E., and that N.E. was a child under the age of 18.
 {¶ 19} The state sufficiently established at trial that N.E. was under 18 when his injuries occurred. Substantial evidence also established that N.E. suffered serious physical harm. Testimonial evidence from medical personnel and photographic evidence demonstrated that N.E. suffered significant bruising on the buttocks and complete break of his right femur bone. Appellant does not dispute the sufficiency of the evidence to support these elements.
 {¶ 20} Appellant's contention under this assignment of error is that the state failed to present sufficient evidence that he committed any acts that resulted in serious physical harm to N.E. According to appellant, the injuries could have occurred during the night, sometime before 7:30 a.m., while N.E. was also under the care of his mother. Consequently, appellant contends, no reasonable trier of fact could have found beyond a reasonable doubt that he was the one responsible for N.E.'s injuries.
 {¶ 21} In support of his contention, appellant cites to State v.Miley (1996), 114 Ohio App.3d 738. Miley was convicted of child endangering after medical exams revealed his week-old daughter had incurred serious internal injuries while in the care of Miley and the child's mother. Miley argued on appeal that the evidence at trial failed to establish beyond a reasonable doubt that he, and not the child's mother, was the one responsible for his daughter's injuries. According to Miley, it was equally plausible to conclude that the abused child's mother was responsible for the injuries because the evidence indicated both Miley and the child's mother were caring for the child when the injuries occurred. The court of appeals agreed, and Miley's conviction was reversed.
 {¶ 22} We find Miley distinguishable from the case at bar. In Miley,
the state apparently offered no evidence that Miley was ever solely
responsible for the care of his daughter. Thus, the jury was not able to conclude beyond a reasonable doubt that Miley, and not the child's mother, was responsible for the child's injuries. In this case, however, from the evidence it was reasonable to infer that N.E. was injured while he was in the sole custody of appellant.
 {¶ 23} There was direct evidence at trial that the injuries occurred sometime between 5:00 a.m. and 5:00 p.m. on March 3, 2003. Jill left the house at approximately 7:30 a.m., after having observed that N.E. appeared normal. Appellant declared to Detective Henson that he awoke at around 9:30 a.m. He then fed the children, did the dishes, then proceeded to bathe N.E. During the bath, Yolanda entered the home, and appellant briefly walked to the stairs to talk to her. Appellant further stated that while returning to the bath, he saw N.E. "getting up and trying to get out of the tub."
 {¶ 24} Expert medical testimony from Dr. Duma established that after suffering the break of his femur bone, N.E. would not have made any attempt to put weight on his leg. Thus, a reasonable jury could have concluded that N.E.'s injury occurred after he attempted to get out of the tub, while solely in appellant's care, or that N.E.'s leg was already broken and appellant's statement that N.E. attempted to get out of the tub was an attempt to hide his wrongdoing. In either event, the jury had a reasonable basis for concluding beyond a reasonable doubt that N.E. was solely in appellant's care when he suffered his injuries. Accordingly, we find appellant's reliance on Miley to be misplaced.
 {¶ 25} In sum, after a careful review of the evidence, we find that competent, credible evidence was submitted by the state on each essential element of the crime of child endangering. We also find that a reasonable trier of fact could have concluded beyond a reasonable doubt that appellant recklessly caused serious physical harm to N.E. Consequently, appellant's contention that the trial court erred in overruling his Crim.R. 29 motion is not well-taken, and his first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "The verdict was against the manifest weight of the evidence."
 {¶ 28} In his second assignment of error, appellant contends his conviction was against the manifest weight of the evidence. Specifically, appellant contends the evidence presented at trial was insufficient to prove two essential elements of the offense beyond a reasonable doubt. Similar to the arguments raised in his first assignment of error, appellant contends the state failed to establish he committed any acts that resulted in the injuries to N.E., and the state failed to establish that he committed any acts in a reckless manner.
 {¶ 29} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. When determining whether a conviction is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. Further, an appellate court should reverse a conviction as against the manifest weight of the evidence only when the evidence weighs heavily against conviction. State v. Allen (1990), 69 Ohio App.3d 366, 374.
 {¶ 30} In conducting an independent review of the evidence in this case, we have recognized that much of the case against appellant was circumstantial. We also recognize, however, that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." State v. Jenks, 61 Ohio St.3d at paragraph one of the syllabus. In fact, "[i]n some instances, certain facts can only be established by circumstantial evidence." Id. at 272.
 {¶ 31} From the circumstantial evidence in this case, a reasonable jury could have concluded beyond a reasonable doubt that appellant recklessly caused N.E.'s injuries. As discussed above, direct evidence established that N.E.'s injuries occurred between 5:00 a.m. and 5:00 p.m. Jill and appellant were both caring for N.E. from 5:00 a.m. until approximately 7:30 a.m. From 7:30 a.m. until sometime in the afternoon when Jill came back home to take N.E. to the hospital, appellant was N.E.'s sole caretaker. During that time period, appellant claims that N.E. attempted to get up and walk while in the bath.
 {¶ 32} Expert medical testimony at trial established that N.E. would not have put any weight on his leg once it was broken. Thus, N.E. either suffered the complete break of his leg after he attempted to get up and walk, while under appellant's sole care, or, appellant lied about N.E. attempting to get out of the tub in an attempt to conceal how N.E.'s injuries really occurred. In either event, the jury could reasonably infer from the circumstantial evidence that appellant recklessly caused N.E.'s injuries.
 {¶ 33} In sum, after reviewing the entire record, weighing all the evidence, direct and circumstantial, and all reasonable inferences therefrom, we do not believe the jury clearly lost its way in convicting appellant. Accordingly, the second assignment of error is overruled.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "The trial court erred in not discharging a juror who admitted to knowing a state witness."
 {¶ 36} In his third and final assignment of error, appellant contends he was denied his constitutional right to a fair and impartial jury when the trial court failed to remove a juror who was acquainted with a witness for the state.
 {¶ 37} A defendant in a state criminal trial has the constitutional right to be tried before a panel of fair and impartial jurors. See Duncanv. Louisiana (1968), 391 U.S. 145, 88 S.Ct. 1444; see, also, Section 10, Article I, Ohio Constitution. Consequently, a jury must decide a case solely on the evidence before it, and not reach its verdict based upon influences outside the courtroom. State v. Taylor (1991),73 Ohio App.3d 827, 831.
 {¶ 38} In dealing with outside influences on a jury, and in determining whether to replace an affected juror, trial courts are granted broad discretion. State v. Keith, 79 Ohio St.3d 514, 527,1997-Ohio-367. Accordingly, this court will not reverse a trial court's decision to retain or replace a juror absent an abuse of discretion.
 {¶ 39} "An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such [a] determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will[,] but perversity of will, not the exercise of judgment[,] but defiance thereof, not the exercise of reason[,] but rather of passion or bias." State v.Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 40} Furthermore, we note that the trial court's decision to retain the juror in question was not objected to below. Therefore, we review for plain error. See Crim.R. 52(B); Evid.R. 103(D). We will not reverse for plain error unless it can be said that but for the error, the outcome of the trial clearly would have been otherwise. State v. Lester (1998),126 Ohio App.3d 1, 8.
 {¶ 41} Turning now to the case at bar, a juror, Mr. Berenzweig, informed the court at the end of the state's case-in-chief that he recognized a witness for the state. Berenzweig worked as a teacher. He informed the court the he recognized Detective Henson because the Detective had occasionally worked as security at his school.
 {¶ 42} Once informed of the possibility of an improper outside influence on Berenzweig, the court allowed the prosecutor and appellant's counsel to question him to ascertain the extent of his relationship with Detective Henson. The questioning revealed that Berenzweig had no contact with Detective Henson other than to occasionally engage in casual conversation that is best described as mere small talk. Berenzweig described his relationship with Detective Henson as neither friendly nor hostile. Furthermore, when asked whether he would give Detective Henson's testimony any additional credibility because of his acquaintance with him outside the courtroom, Berenzweig clearly indicated that he would not.
 {¶ 43} A trial court may rely upon a juror's testimony as a basis for finding that his or her impartiality was not affected by an outside influence. State v. Herring, 94 Ohio St.3d 246, 259, 2002-Ohio-796. We should assume, moreover, unless an appellant can demonstrate otherwise, that jurors follow their oaths and deliberate only upon the evidence adduced at trial. State v. Durr (1991), 58 Ohio St.3d 86, 91.
 {¶ 44} Finally, nothing in the record even remotely suggests that Berenzweig and Detective Henson ever discussed appellant or his trial. For this, and all the foregoing reasons, we do not find the trial court abused its discretion in determining not to remove Berenzweig as a juror. We also do not find the outcome of appellant's trial clearly would have been different had the trial court removed Berenzweig. Accordingly, appellant's third and final assignment of error is overruled.
 {¶ 45} Judgment affirmed.
Young, P.J., and Valen, J., concur.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution. At the time this case was submitted, Judge Valen was a duly elected judge of the Twelfth District Court or Appeals.