[Cite as *State v. Fitzgerald*, 2017-Ohio-2716.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-06-041 |
| | : | O P I N I O N |
| - vs - | | 5/8/2017 |
| | : | |
| KAILI FITZGERALD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMMON PLEAS
Case No. 2015 CR 00316

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Blake P. Somers, 114 East Eighth Street, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Kaili Fitzgerald, appeals her conviction in the Clermont County Court of Common Pleas for felony child endangering. For the reasons detailed below, we affirm Fitzgerald's conviction.

{¶ 2} On June 4, 2015, a Clermont County grand jury indicted Fitzgerald for one count of endangering children, a violation of R.C. 2919.22(A). The indictment stemmed from allegations that Fitzgerald and her husband, Michael, neglected their son, Z.F., by failing to

provide him with adequate nourishment. The indictment specified that Z.F. suffered "serious physical harm." This specification elevated the charge from a misdemeanor to a third-degree felony. The grand jury indicted Michael on an identical charge.

{¶ 3} Z.F. was born June 5, 2014. The Fitzgeralds took him to a pediatrician for regular "well infant" visits through August 2014. In August 2014, Z.F.'s pediatrician determined that Z.F. was in the 25th percentile for infant weight.

{¶ 4} For the next four months, the Fitzgeralds did not bring Z.F. to his pediatrician. Z.F.'s next appointment occurred on January 9, 2015 and the pediatrician observed that Z.F.'s weight now registered well below the third percentile for a seven-month-old child.[1] Z.F. had gained only nine ounces in the four months since his last check-up. A healthy child is expected to gain five to eight ounces *a week*.

{¶ 5} The pediatrician sent Z.F. to Cincinnati Children's Hospital, where doctors admitted him and diagnosed him with failure to thrive. Z.F. remained at the hospital for five or six days. After receiving proper nutrition at the hospital, Z.F. quickly gained weight. Children's services became involved in the case and Z.F. was released to a relative. With proper care, Z.F. returned to a normal weight.

{¶ 6} Fitzgerald told investigators that she was depressed, that she would ignore Z.F. in favor of playing video games, and that she would leave Z.F. alone in his crib to cry. Michael told investigators that he worked, was away from the home most of the time, and was unaware that Fitzgerald was not feeding Z.F. A text exchange between Fitzgerald and Michael, introduced at trial, reflects them discussing and laughing about letting Z.F. "cry it out" in his crib and how long it would take before he would stop crying.

---

1. A growth chart introduced at trial depicted that Z.F.'s weight at seven months old was significantly below the lowest line on the chart, which represented the third percentile. At seven months, Z.F.'s weight was in the 50th percentile for a two month old.

{¶ 7} The WIC assistance program provided baby food to the Fitzgeralds. WIC records indicated that the Fitzgeralds received sufficient food to provide for Z.F.'s nutritional needs. Consequently, the Fitzgeralds simply were not feeding Z.F. regularly or in sufficient quantities.

{¶ 8} The Fitzgeralds waived a jury trial and proceeded to a joint bench trial. Prior to trial, the Fitzgeralds stipulated to facts sufficient for the court to find them guilty of misdemeanor child endangering. However, the Fitzgeralds disputed that their failure to care for Z.F. caused him serious physical harm. Accordingly, the sole issue to be resolved by the trial court was whether Z.F. suffered serious physical harm.

{¶ 9} At trial, each party called their own pediatric expert to testify. Although none of the experts personally treated Z.F., they had all reviewed his relevant medical records. Dr. Kathi Makoroff testified for the state. Dr. Makoroff was board certified in general pediatrics as well as child abuse pediatrics, a sub-specialty. The court recognized her as an expert in both specialties. Dr. Makoroff worked at the Mayerson Center, a child advocacy center at Cincinnati Children's Hospital. Dr. Makoroff opined that Z.F. suffered pain from starvation and that at least some of the time between August 2014 and January 2015, Z.F. would have experienced acute, severe, and prolonged pain. Dr. Makoroff described the pain as "hunger pains," a "discomfort," and an "emptiness." Dr. Makoroff testified that infants express pain through crying.

{¶ 10} Dr. Lisa Prock, a pediatrician at Boston Children's Hospital, testified for Michael. The court recognized Dr. Prock as an expert in pediatric medicine. Dr. Prock testified that infants cry when they experience pain and that children who are being starved would feel pain. However, Dr. Prock could not offer a medical opinion as to whether Z.F. experienced any pain during the four months between pediatrics visits. Based on Z.F.'s medical records in January 2015, Dr. Prock testified that it did not appear that Z.F. was

suffering pain at the time of his admission to the hospital.

{¶ 11} Dr. David Roer, a local pediatrician in private practice, testified for Fitzgerald. The court recognized Dr. Roer as an expert in pediatric medicine. Dr. Roer opined that pain was not a symptom of failure to thrive and therefore Z.F. did not suffer pain. Dr. Roer explained that he associated pain with more physical causes, needle pricks, lacerations, etc. He defined "acute pain" as "something physical going on that's causing [the patient] to suffer physical pain." Dr. Roer did not consider the sensations caused by hunger, i.e., "hunger pains," the same as "actual pain." Dr. Roer conceded that Z.F.'s weight in January 2015 was "significant." However, he would not have recommended that Z.F. be hospitalized.

{¶ 12} After considering the evidence presented, the trial court found that the state had demonstrated that Z.F. suffered serious physical harm and therefore rendered a guilty verdict against the Fitzgeralds. The court concluded that the state only proved serious physical harm under R.C. 2901.01(A)(5)(e): "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." Specifically, the court concluded that the state demonstrated "prolonged pain." The court noted that it credited the testimony of Dr. Makoroff over the other two experts because of her accreditation in child abuse pediatrics.

{¶ 13} Fitzgerald assigns two errors for our review. We address them together.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE JUDGMENT OF THE COURT BELOW MUST BE REVERSED BECAUSE THE COURT'S DETERMINATION THAT Z.F. SUFFERED FROM "SERIOUS PHYSICAL HARM" PURSUANT TO R.C. § 2901.01(A)(5)(e) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION.

{¶ 16} Assignment of Error No. 2:

- 4 -

{¶ 17} THE JUDGMENT OF THE COURT BELOW MUST BE REVERSED BECAUSE THE COURT'S DETERMINATION THAT Z.F. SUFFERED FROM "SERIOUS PHYSICAL HARM" PURSUANT TO R.C. § 2901.01(A)(5)(e) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} Fitzgerald argues there was insufficient evidence to allow the court to conclude she caused Z.F. serious physical harm. Fitzgerald contends that Dr. Makoroff's testimony was the sole basis upon which the court concluded that Z.F. suffered prolonged pain and the doctor's testimony was generalized, hypothetical, and not specific to pain that Z.F. experienced. Alternatively, Fitzgerald argues that if there was sufficient evidence of serious physical harm, the court's conclusion was nonetheless against the manifest weight of the evidence because the court gave too much weight to the testimony of a doctor who had little expertise in neglect cases.

{¶ 19} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 20} The court convicted Fitzgerald of child endangering, a violation of R.C. 2919.22(A). Generally, the statute prohibits a person having custody or control of a child from creating a substantial risk of harm to the child by violating a duty of care. If the violation of duty leads the child to suffer serious physical harm, the crime is a felony. R.C. 2919.22(E)(2)(c).

{¶ 21} For purposes of this appeal, the relevant definition of "serious physical harm" is "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). Thus, this sub-section describes three categories of pain that constitute serious physical harm: "acute pain of such duration as to result in substantial suffering," any degree of "prolonged pain," and any degree of "intractable pain."

{¶ 22} Fitzgerald argues that Dr. Makoroff's testimony regarding pain was generic, that the doctor couched her opinion testimony with reference to what "an infant" would experience, rather than Z.F. Our review of the record indicates otherwise. In response to questions from the court, Dr. Makoroff testified that "I would expect that [Z.F. would have experienced prolonged pain] based on the degree of lack of weight gain during that time." Dr. Makoroff further testified that "the child suffered acute and severe pain." Accordingly, there is no merit to the argument that Dr. Makoroff's opinion testimony was not specific to Z.F.

{¶ 23} Dr. Makoroff testified that in her expert opinion, and within a reasonable degree of medical certainty, Z.F. experienced the sensations associated with starvation, i.e., discomfort, emptiness, hunger pains, for days or weeks during the four months the Fitzgeralds were failing to properly feed him. We conclude that this testimony was sufficient to permit the factfinder to conclude, beyond a reasonable doubt, that Z.F. endured prolonged

pain and therefore suffered serious physical harm.

{¶ 24}  With respect to the manifest weight of the evidence, Fitzgerald argues that Dr. Makoroff's testimony was not entitled to the weight given by the court because Dr. Makoroff's curriculum vitae indicated that she had far greater expertise in child sexual abuse and physical trauma than in child neglect.[2]

{¶ 25}  However, Dr. Makoroff testified that she was board certified in general pediatrics as well as child abuse pediatrics and neglect cases were part of her daily employment with the Mayerson Center.  Dr. Makoroff also testified that she had seen thousands of child patients during her professional career.  Dr. Makoroff's professional background and credentials demonstrate that she was well qualified to offer an expert opinion in matters of child neglect.[3]

{¶ 26}  We conclude that the greater weight of the evidence supported the verdict. The evidence showed that the Fitzgeralds slowly starved their child over the course of four months.  Z.F. gained approximately the same amount of weight in four months that a healthy, properly fed infant would gain in a week.  Dr. Makoroff testified that Z.F. would have experienced the sensations associated with starvation for days or weeks.  All three experts also agreed with the common-sense proposition that that infants cry to express pain. In this regard, the evidence showed that Z.F. would cry and the Fitzgeralds reacted by leaving him alone to "cry it out."  Finally, Z.F. was hospitalized for several days following a failure to thrive diagnosis.  Accordingly, we do not find that Fitzgerald's conviction is against the manifest

---

2. Fitzgerald does not assign error to the court's consideration of Dr. Makoroff's testimony and expert opinion. We note that Fitzgerald did not object to the court designating Dr. Makoroff an expert.  Therefore, had Fitzgerald raised this issue on appeal she would be limited to review for plain error.

3.  We agree with Fitzgerald that all three expert witnesses had excellent credentials and were qualified to provide their expert opinion.  We also agree that the trial court's comment that it favored Dr. Makoroff's testimony because she was board certified in child abuse pediatrics was both unnecessary and ill-advised considering the credentials of the other two experts.  Nonetheless, the court was permitted to rely only on Dr. Makoroff's testimony.

weight of the evidence. Fitzgerald's two assignments of error are therefore overruled.

{¶ 27}   Judgment affirmed.


RINGLAND and M. POWELL, JJ., concur.