[Cite as *State v. Tucker*, 2019-Ohio-911.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-12-172 |
| Appellee, | : | O P I N I O N<br>3/18/2019 |
| | : | |
| - vs - | : | |
| | : | |
| WILLIAM R. TUCKER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-01-0028

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Michele Temmel, 6 South Second Street, #305, Hamilton, OH 45011, for appellant

**M. POWELL, J.**

{¶ 1} William Tucker appeals his convictions in the Butler County Court of Common Pleas for aggravated arson and murder. For the reasons described below, this court affirms Tucker's convictions.

{¶ 2} This case stems from the death of firefighter Patrick Wolterman, who died in the line of duty on December 28, 2015, while attempting to extinguish a fire at the home of Tucker's uncle, codefendant Lester Parker. The state alleged that Parker arranged for

Tucker to set fire to Parker's home while Parker was away, in exchange for oxycodone tablets. Parker's motive was to collect insurance proceeds.

{¶ 3} A Butler County grand jury indicted Tucker with two counts of aggravated arson, violations of R.C. 2909.02(A)(1) and (A)(2), and one count of felony murder, a violation of R.C. 2903.02(B). In the same indictment, the grand jury charged Parker with identical counts.

{¶ 4} The matter proceeded to a joint, 9-day, jury trial. The jurors found both men guilty as charged. The court sentenced each to 15 years to life in prison. Tucker appeals, raising five assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Tucker argues that the state's evidence was legally insufficient to convict him of the aggravated arson counts as the evidence against him was entirely circumstantial. Tucker further argues that his convictions were against the weight of the evidence.

{¶ 8} The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. *State v. Everitt*, 12th Dist. Warren No. CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the sufficiency of the evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found all the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 9} To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 10} The trial evidence revealed that Parker, who lived with his wife Bertha at 1310 Pater Avenue in Hamilton, Ohio, had debts exceeding $143,000. On the day of the fire, approximately $60,000 of those debts were past due. Shortly before Christmas Eve 2015, Parker began moving various items out of 1310 Pater Avenue. Items removed included framed family photographs, decorative objects and mementos, and important documents. On December 27, 2015, Parker and Bertha went to Las Vegas on a planned vacation.

{¶ 11} Tucker, originally from Hamilton, Ohio, resided in Richmond, Kentucky at the time of the fire. During the evening hours of December 27, 2015, Kim Brooks, one of Tucker's girlfriends, requested that Courtney Basinger drive to Richmond to bring Tucker back to Hamilton. Basinger understood that she was bringing Tucker to Hamilton so that he could obtain oxycodone tablets. Basinger understood that she would be compensated for transporting Tucker with gas money and oxycodone.

{¶ 12} Basinger was accompanied by Brooks, Basinger's two children, and the children's teenaged babysitter. Basinger met Tucker at a CVS Pharmacy in Richmond.

- 3 -

Tucker was carrying a gym bag. Upon their return to Hamilton, Basinger dropped off the children and the babysitter and she, Tucker, and Brooks drove to the east side of Hamilton.

{¶ 13} Tucker instructed Basinger to park on Grand Boulevard between Pater Avenue and Allstatter Avenue. Basinger testified that Tucker exited the vehicle with the gym bag and walked towards Pater Avenue. Tucker then turned onto Pater Avenue and disappeared from her view as he continued up the street. Basinger estimated that Tucker returned to the vehicle approximately 20 minutes after leaving. As he approached the vehicle, he was breathing heavily, carrying the gym bag, a gas can, and a padlock. Basinger's vehicle was confirmed to have been in the vicinity of 2400-2510 Grand Boulevard on December 28, 2015 at 12:45 a.m. based upon a police cruiser license plate reader report. Google GPS data taken from Basinger's cellular phone records indicated that her phone was stationary between 12:41 a.m. and 12:52 a.m.

{¶ 14} At 1:05 a.m. on December 28, 2015, Officer Brian Gleason of the Hamilton Police Department was dispatched to 1310 Pater Avenue in reference to an intrusion alarm. Upon arrival he discovered smoke coming from the home. He conducted a perimeter sweep and noted that the rear cellar doors to the home were open. It was later determined that the cellars doors had been secured by a hasp and padlock. Based on damage to the hasp, detectives believed that it had been broken off with a pry tool.

{¶ 15} The fire department responded at 1:15 a.m. Firefighter Wolterman entered the home through the front door. By then, however, an arson fire set in the home's basement had severely damaged the joists supporting the first floor. The floor collapsed and Wolterman fell through to the basement and he perished from the effects of the fire.

{¶ 16} In the ensuing investigation, Detective Webb of the Hamilton police department travelled to Richmond to question Tucker about the fire. Tucker denied any involvement and claimed that he was in Richmond when the fire occurred.

- 4 -

{¶ 17} The evidence indicated that Tucker routinely used the cellular phones of friends and family. Tucker also communicated via Facebook messenger.

{¶ 18} Detectives obtained records for the cellular phones of Parker, Tucker's brother Stacy, Tucker's girlfriend Linda Rose, a prepaid cellular phone Parker purchased and activated while he was in Las Vegas and a pay phone in a Marathon gas station parking lot located across from the Cove Motel in Hamilton.

{¶ 19} Stacy testified that he and Parker rarely spoke to one another. However, on December 20, 2015, eight days prior to the fire, records indicated a 27-minute call, initiated by Parker to Stacy's cellular phone.

{¶ 20} Although Linda Rose knew neither Parker nor his wife Bertha, a call was placed from her cellular phone to Parker's cellular phone on December 27, 2015 at 1:38 p.m. The call lasted 27 seconds.

{¶ 21} At 3:15 a.m., on December 28, 2015, Tucker sent Rose a Facebook message that read, "Baby Doll. Done with the job. Got to get some rest and call you tomorrow."

{¶ 22} During the afternoon of December 28, 2015, there were four calls between Stacy's cellular phone and either Parker's cellular phone or Parker's prepaid Las Vegas phone. An additional call occurred between Stacy's cellular phone and Parker's cellular phone on December 29, 2015 at 11:22 a.m.

{¶ 23} Tucker and Brooks stayed at the Cove Motel in Hamilton on December 29 and left on December 30, 2015. On December 30, 2015 there were seven phone calls placed from either Parker's cellular phone or his Las Vegas prepaid phone to the pay phone across the street from the Cove Motel.

{¶ 24} James Parker (unrelated) dated Parker's daughter, Melissa Jones. He testified that in June 2015 he was helping Parker install siding on Parker's garage located next to 1310 Pater Avenue. He commented to Parker about recent renovations to 1310

Pater Avenue. Parker told him that the renovations had occurred because of a fire that he and his nephew had set for "insurance reasons."

{¶ 25} At trial, Tucker testified and admitted that he lied to the detective who questioned him about his whereabouts on the morning of the fire. Tucker admitted that Basinger had transported him to the area of Pater Avenue where he briefly left the vehicle. However, Tucker claimed that his purpose was not to set a fire but to obtain oxycodone tablets from Melissa Jones. Tucker asserted that he had arranged to meet Melissa around midnight on Allstatter Avenue where he purchased 30 oxycodone tablets from her and left.

{¶ 26} Upon a thorough review of the record, this court concludes that the jurors did not lose their way in finding Tucker guilty. The state presented substantial circumstantial evidence establishing that Tucker and Parker conspired to commit arson and that Tucker was the individual who set fire to Parker's home. Tucker was in communication with Parker before and after the fire and admitted he was on the scene at the very moment the fire started. Basinger testified that Tucker was carrying a gas can upon returning to the vehicle.

{¶ 27} Both Tucker and Parker testified. Parker denied being involved in the fire and claimed that the state's witnesses, including both of his daughters, were liars. Tucker's defense case rested on the likelihood of jurors believing that he just happened to plan to meet Parker's daughter a block away from her father's home at the precise time an arson fire was committed there. The jury is in a better position than this court to weigh credibility. This is not a case where the evidence weighs heavily against the conviction. This court's determination that the greater weight of the evidence supports Tucker's conviction is dispositive of the issues of the sufficiency of the evidence. *Jones*, 2013-Ohio-150 at ¶ 19. This court overrules Tucker's first assignment of error.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHERE

IT FAILED TO GRANT DEFENDANT'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER.

{¶ 30} Tucker argues that the trial court plainly erred when it did not sever his joint trial. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Crim.R. 52(B); *State v. Lott*, 51 Ohio St.3d 160, 164 (1990).

{¶ 31} Crim.R. 8(B) allows for joinder of defendants in the same indictment. Joinder of defendants and the avoidance of multiple trials is favored in the law. *State v. Thomas*, 61 Ohio St.2d 223, 225 (1980). Joinder conserves judicial and prosecutorial time, lessens the considerable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries. *Id.* "[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance." *State v. Schiebel*, 55 Ohio St.3d 71, 88-89 (1990).

{¶ 32} Crim.R. 14 permits a trial court to sever a joint trial and grant separate trials if joinder has a prejudicial effect on the accused. However, the accused bears the burden of proving prejudice. *State v. Coley*, 93 Ohio St.3d 253, 259 (2001). "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever.'" *Schiebel* at 89, quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

{¶ 33} A defendant may establish prejudice sufficient to warrant severance "'when evidence that the jury should not consider against a defendant and that would not be

admissible if a defendant were tried alone is admitted against a codefendant.'" *State v. Walters*, 10th Dist. Franklin No. 06AP-693, 2007-Ohio-5554, ¶ 25, quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933 (1993). Defendants "are not entitled to severance merely because they have a better chance of acquittal in separate trials." *Zafiro* at 540.

{¶ 34} Tucker argues that substantial evidence that was only relevant to Parker's charges could have erroneously and prejudicially implicated him in the conspiracy. Specifically, Tucker points to the evidence of Parker's financial distress, Parker's removal of items from the home before the fire, Parker's continued gambling in Las Vegas after the fire, and other evidence circumstantially implicating Parker in the arson. Tucker argues that because it was undisputed that Parker was in Las Vegas at the time of the fire then jurors may have concluded that the Tucker must have set the fire simply because he was the only other codefendant who was available to accomplish the task.

{¶ 35} However, there is "no resulting prejudicial effect when the evidence of each crime as alleged against each defendant is simple and distinct." *State v. Wyche*, 10th Dist. Franklin No. No. 87AP-878, 1989 Ohio App. LEXIS 647, *9 (July 19, 1989). "In such cases, the jury is capable of separating the proof required for each charge as to the individual defendants." *Id.*, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980).

{¶ 36} The evidence related to Parker's motivation to commit arson and his preparations for the arson are simple and distinct from the evidence related to Tucker's involvement in the conspiracy and there is no indication in the record that the jurors would have had any difficulty in separating the evidence as it related to each codefendant. And because this was a conspiracy, much of the evidence inculpating Parker in the offense was relevant and admissible against Tucker to establish the conspiracy.

{¶ 37} At oral argument, appellate counsel specifically argued the inadmissibility and resulting prejudice from James Parker's testimony. Parker testified that Parker told him that

he and an unidentified nephew had earlier set a fire for insurance reasons. This court agrees that this testimony may not have been admissible in a stand-alone trial against Tucker. However, this court does not find that the court plainly erred in failing to, sua sponte, sever Tucker's trial following this testimony. As discussed in the prior assignment of error, the jurors convicted Tucker on ample circumstantial evidence of his role in the arson. Given the substantial evidence, this court cannot clearly find that jurors would have found Tucker not guilty in a stand-alone trial that excluded this testimony.

{¶ 38} In addition, the court properly instructed the jury on the rules concerning the consideration of separate evidence in a joint trial and this court presumes that jurors follow the trial court's admonitions. *State v. Loza*, 71 Ohio St.3d 61, 75 (1994). Tucker has established neither error nor plain error. This court overrules Tucker's second assignment of error.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT ALLOWED THE STATE TO INTRODUCE DEMONSTRATIVE EVIDENCE.

{¶ 41} Tucker contends that the trial court abused its discretion in allowing the admission of a demonstrative videotape that depicted the state's theory of how the arsonist used a pry tool to break into the basement of Parker's home.

{¶ 42} At trial, Parker's daughter, Cheryl Sullivan, testified that she was at Parker's home on December 27, 2015, helping Parker and Bertha prepare for their Las Vegas trip. She recalled seeing that the cellar doors were closed and locked with a little "goldish" color lock. However, when first responders arrived on scene, they found that the cellar doors were open.

{¶ 43} Detective Fishwick testified that in his inspection of the cellar doors he noted that the base of the original fastening mechanism was still attached to the door. However,

it appeared to be missing an eyelet. Additionally, the hasp, i.e., the flat metal piece that fits over the eyelet, which would then allow a padlock to secure the door, was missing. Detectives searched the area and did not recover any of the missing hardware or the padlock.

{¶ 44} Detective Fishwick further testified that it appeared that the base exhibited evidence of tool marks. Based on these observations, Detective Fishwick opined that the hasp lock was removed with a pry tool, such as a pry bar, to break the lock and open the cellar doors.

{¶ 45} Detective Fishwick testified that the police subsequently removed the cellar doors from the residence and kept them as evidence. Detectives then decided to attempt to recreate the cellar door break-in. At a local hardware store, they purchased a pry bar and a hasp lock, which consisted of a base, eyelet, and hasp. The base of the purchased hasp lock appears similar, if not identical, to the original base on the cellar door.

{¶ 46} The detectives then removed the original base and installed the new hasp lock through the original bolt holes. They secured the lock with a padlock, and a detective used the pry bar to quickly break the lock, which was recorded on video.

{¶ 47} Over objection, the state was permitted to publish the 30-second video demonstrating the state's theory on how the arsonist broke into 1310 Pater Avenue. Tucker contends that the admission of the video was erroneous because that there was no evidence indicating the presence of any pry tool or that the fastening mechanism or hasp lock was substantially similar to what was originally on the cellar doors. This court reviews the trial court's decision to admit or exclude under the abuse of discretion standard. *State v. Robb*, 88 Ohio St.3d 59, 69 (2000). This court has held that "demonstrative evidence is admissible only if (1) it is relevant, (2) it is substantially similar to the object or occurrence that it is intended to represent, and (3) it does not consume undue time, confuse the issues,

or mislead the jury." *State v. Hause*, 12th Dist. Warren No. CA2008-05-063, 2009-Ohio-548, ¶ 42.

{¶ 48} The trial court did not abuse its discretion in admitting the videotape. The videotape was relevant. One of the issues raised by the defense was whether Tucker had sufficient time to travel from Basinger's vehicle to 1310 Pater Avenue, break in, set the fire, and return to the vehicle. The video demonstrated how quickly a fastening mechanism of the type that may have been on the cellar door could be removed with a small, portable tool, such as a pry tool.

{¶ 49} With respect to whether the purchased hasp lock was substantially similar, the photograph of the original base hardware looks similar if not identical to the hardware purchased by the police for the recreation. It is reasonable to assume that the missing hasp and eyelet would be substantially similar to the replacement hardware.

{¶ 50} With regard to the tool used in the recreation, the state's theory was that the perpetrator of the arson used a pry tool, as opposed to a cutting tool, based on the presence of abrasions on the base hardware and the manner in which it was damaged. This is a reasonable assumption based upon the facts known to the police.

{¶ 51} Finally, this court does not find that the demonstrative video would confuse the issues or the mislead the jury. The testimony made clear that police did not have the either the original hardware or the padlock and this piece of demonstrative evidence simply explained the state's theory of how the arsonist entered the home, and the speed at which such a break-in could be accomplished if it was planned. Even if the hardware and tool used in the recreation did not exactly replicate how the arsonist entered the property, the recreation was substantially similar to what may have occurred based on evidence in the record. This court overrules Tucker's third assignment of error.

{¶ 52} Assignment of Error No. 4:

{¶ 53} THE TRIAL COURT ERRED WHEN IT SUSTAINED THE STATE'S OBJECTION TO LINDA ROSE TESTIFYING AS TO THE MEANING OF A TEXT MESSAGE.

{¶ 54} Tucker argues that the court abused its discretion when it would not permit Tucker's defense counsel to ask Linda Rose her opinion on the meaning of a Facebook message she received from Tucker.

{¶ 55} Prior to trial, the state moved in limine for a ruling to exclude testimony from Linda Rose as to what "job" Tucker was referring to when he sent her the Facebook message, at 3:17 a.m. on December 28, 2015, stating "Babydoll. Done with the job. Got to get some rest and call you tomorrow. Love you." The state anticipated that Linda Rose would testify that she believed Tucker was referring to a roofing job and argued that her opinion would be entirely speculative as she was not with Tucker that morning. The court granted the motion. At trial, during Rose's cross-examination, Tucker's attorney called for a sidebar to proffer her question to Rose as to what Rose thought the Facebook message meant. The court again excluded the testimony based on its speculative nature.

{¶ 56} This court reviews the trial court's decision to admit or exclude evidence under the abuse of discretion standard. *Robb*, 88 Ohio St.3d at 68. Evid.R. 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The first requirement of Evid.R. 701 is a restatement of the firsthand knowledge rule, Evid.R. 602, which requires that a witness not testify to any matter "unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Evid.R. 602; *State v. Kehoe*, 133 Ohio App.3d 591, 603 (12th Dist.1999).

{¶ 57} The trial court did not abuse its discretion. Linda Rose had knowledge that Tucker worked as a roofer and could have had knowledge that he sometimes worked at night. However, Linda Rose was not with Tucker that night and her opinion as to what he meant by "job" would have been entirely speculative and not based on her perception or personal knowledge. Accordingly, her opinion would not meet the requirements of Evid.R. 701.[1] This court overrules Tucker's fourth assignment of error.

{¶ 58} Assignment of Error No. 5:

{¶ 59} THE STATE OF OHIO ENGAGED IN PROSECUTORIAL MISCONDUCT AT TRIAL.

{¶ 60} Tucker argues that the state committed prosecutorial misconduct during closing argument, which deprived him of a fair trial. To demonstrate that the state deprived him of a fair trial, Tucker must establish that the prosecutor's remarks were improper and prejudicially affected his substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. In making such a determination, the focus is upon the fairness of the trial, not upon the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant can establish that he has been denied a fair trial because of the prosecutor's actions. *State v. Smith*, 12th Dist. Warren No. CA2017-02-013, 2017-Ohio-7540, ¶ 29.

{¶ 61} Tucker argues that state committed misconduct when the prosecutor stated "so don't be misled by statements of attorneys telling you otherwise." Tucker argues that the prosecutor was implying that defense counsel had been deceitful. Tucker's counsel

---

1. Moreover, this court notes that Linda Rose's anticipated testimony that Tucker was referring to a roofing job would be inconsistent with Tucker's testimony that the "job" he ostensibly completed was buying oxycodone tablets from Melissa Jones to sell in Hamilton.

objected and the trial court sustained the objection, instructing jurors to disregard the statement. This court does not find that the comment deprived Tucker of a fair trial. As discussed above, the jury convicted Tucker on substantial evidence of his guilt. Moreover, this court presumes that jurors followed the trial court's instructions to disregard the comment. *Loza*, 71 Ohio St.3d at 75.

{¶ 62} Next, Tucker argues that the state committed misconduct when the prosecutor encouraged the jury to engage in "experiments" with regard to the passage of time. The prosecutor encouraged jurors to "take out your watches" and allow 27 seconds to elapse, which was the length of the call between Linda Rose's cellular phone and Parker's cellular phone on the day before the fire. The prosecutor argued that this would demonstrate that 27 seconds was sufficient time for Tucker and Parker to confirm that they were proceeding with the arson plan.

{¶ 63} Later, the state recommended that the jurors "take out a stopwatch and have an 11-minute moment of silence," i.e., the time that Basinger's phone remained stationary while she was parked on Grand Boulevard. Tucker objected, and the court indicated that it did not want the prosecutor encouraging jurors to count the passage of time, off the record, and during deliberations. Instead, the court permitted the prosecutor to make his point by holding a five-minute moment of silence during closing argument.

{¶ 64} Jurors are obligated to decide a case based only upon the evidence and arguments presented during the trial. *State v. Villarreal*, 12th Dist. Butler No. CA2004-02-035, 2005-Ohio-1924, ¶ 37, citing *State v. Taylor*, 73 Ohio App.3d 827, 831 (4th Dist.1991). It is therefore misconduct for a juror to engage in any independent inquiry or experimentation concerning the matter at trial. *Taylor* at 831. Juror misconduct is only grounds for reversal if it results in prejudice to the defendant. *Id.*, citing *Armleder v. Lieberman*, 33 Ohio St. 77 (1877).

{¶ 65} This court does not find that juror misconduct occurred or that the prosecutor encouraged juror misconduct. Juror misconduct cases involving experimentation typically involve a juror using extraneous tools, procedures, or methods to test a hypothesis, outside of jury deliberations. *See, e.g.*, *State v. Doan*, 1st Dist. Hamilton No. C-940330, 1995 Ohio App. LEXIS 4395 (juror conducted lighting experiment by putting lipstick on her arm to simulate a bruise and tried to see it in a darkened room); *State v. Hubbard*, 8th Dist. Cuyahoga No. 92033, 2009-Ohio-5817 (juror used binoculars to determine how much she could observe from 50 feet away).

{¶ 66} Out-of-court experimentation by a juror is improper for various reasons, including that the variables that might affect the outcome are not known or controlled by the court or parties and could differ from the facts in evidence. However, the passage of time is a constant and is also a common experience of everyday life. Therefore, the risks inherent in jurors conducting experiments are not present when asking jurors to consider the passage of time as it relates to the theory of the case. This court overrules Tucker's fifth assignment of error.

{¶ 67} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.