[Cite as *State v. Juniel*, 2013-Ohio-5459.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                     :           C.A. CASE NO.    25629

v.                                               :           T.C. NO.    12CR1957

KENNETH A. JUNIEL                                :           (Criminal appeal from
                                                             Common Pleas Court)

    Defendant-Appellant                    :

                                                 :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___13th___ day of _____December_____, 2013.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 E. Stroop Rd., Kettering, Ohio 45429
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}  Defendant-appellant Kenneth A. Juniel appeals his conviction and sentence for one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree;

and one count of inducing panic, in violation of R.C. 2917.31(A)(3), a felony of the fifth degree. Juniel filed a timely notice of appeal with this Court on February 13, 2013.

{¶ 2} The incident which forms the basis of the instant appeal occurred during the evening of June 25, 2012, when the complainant, Tonisha Woodard, returned to her apartment located at 5754 Fisher Drive in Huber Heights, Ohio, where she lived with her three children. Woodard testified that prior to the incident on June 25, 2012, the appellant, Juniel, resided with her and her children for approximately six months, but at some point she asked him to leave and took back the key she had given him.

{¶ 3} From time to time, however, Juniel would spend the night at Woodard's residence, as he did on the evening of June 24, 2012. The next morning Woodard and Juniel argued, and she told him to leave the apartment and take any property that belonged to him. Woodard then left the apartment to attend a doctor's appointment after which she picked up her children and a friend named Tammerin Jones. Woodard testified that while she was out, Juniel called her twice, but she did not answer either call.

{¶ 4} Woodard returned to her apartment between 5:00 and 6:00 p.m. Because she did not know if Juniel was still in her apartment, she sent her son to knock on the door. After Woodard's son knocked on the front door and returned to the vehicle, Juniel ran out of the apartment and right up to the driver's side of her vehicle. Woodard testified that Juniel jumped on her, wrapped his hands around her neck, and began choking her. While he was choking her, Juniel also managed to rip Woodard's top. As he was choking her, Juniel cursed at her, called her derogatory names, and told her he was going to kill her.

{¶ 5} Woodard's son tried to punch Juniel, allowing her to get away and run to her

neighbor's house. By the time Woodard and her children ran into her neighbor's apartment, the police had already been called. Juniel stood outside the back patio of Woodard's neighbor's apartment until the police arrived. At that point, Juniel ran back into Woodard's apartment and barricaded himself inside.

{¶ 6} After questioning Woodard regarding the nature of the assault, the police informed Juniel over the loudspeaker in a patrol cruiser that he was under arrest and further ordered him to leave Woodard's apartment and give himself up. From inside the apartment, Juniel informed the police several times that he was coming out, but he never did. After approximately thirty minutes, the police called the SWAT team because Juniel would not give himself up and the officers had cause to believe that he was armed.

{¶ 7} Approximately one hour later, the SWAT team arrived at the scene and evacuated all of the apartments adjacent to Woodard's residence. During this time, the police moved Woodard into a police cruiser for her safety. While inside the cruiser, Woodard informed the police that Juniel had contacted her by text message and phone threatening to burglarize her apartment and threatening to kill her. Woodard also testified that Juniel was known to always have a gun on his person. Police negotiators attempted to persuade Juniel to come out, but he refused. After approximately three hours, the SWAT team decided to force Juniel out of the apartment by deploying tear gas into the apartment. A total of twelve rounds were deployed into Woodard's apartment. Shortly thereafter, Juniel exited the apartment through the front door. Juniel was immediately arrested and taken into custody.

{¶ 8} On July 26, 2012, Juniel was indicted for one count of attempt to commit

felonious assault (serious physical harm) and one count of inducing panic (at least $1,000.00 but less than $7,500.00). Juniel waived a jury, and the matter proceeded to a bench trial. The trial court ultimately found Juniel guilty of the lesser included offense of misdemeanor assault and inducing panic as charged in the indictment. The trial court sentenced Juniel to one-hundred and eighty days in jail for the assault count and twelve months in prison for the inducing panic count. The trial court ordered that the sentences be served concurrently.

{¶ 9}   It is from this judgment that Juniel now appeals.

{¶ 10}   Juniel's sole assignment of error is as follows:

{¶ 11}   "APPELLANT'S CONVICTION FOR INDUCING PANIC IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE GUILT BEYOND A REASONABLE DOUBT."

{¶ 12}   In his sole assignment, Juniel contends that his conviction for inducing panic was not supported by sufficient evidence, and should, therefore, be reversed.

{¶ 13}   "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable

minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 14} Juniel was found guilty of inducing panic in violation of R.C. 2917.31(A)(3), which provides:

(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:

(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

{¶ 15} R.C. 2917.31(C)(4)(a) states in pertinent part:

(C)(4) Except as other wise provided in division (C)(5), (6), (7), or (8) of this section, if a violation of this section results in economic harm, the penalty shall be determined as follows:

(a) If the violation results in economic harm of one thousand dollars or more but less than seven thousand five hundred dollars and if division (C)(3) of this section does not apply, inducing panic is a felony of the fifth degree.

{¶ 16} Economic harm includes "[a]ll costs incurred by the state or any political subdivision as a result of, or in making any response to, the criminal conduct that constituted the violation of this section or section 2917.32 of the Revised Code, including, but not limited to, all costs so incurred by any law enforcement officers, firefighters, rescue personnel, or emergency medical services personnel of the state or the political subdivision."

R.C. 2917.31(E)(1)(b).

{¶ 17} At trial, the State argued that Juniel committed the offense of inducing panic when he assaulted Woodard by choking her, ripping her clothing, and running into Woodard's apartment where he was not permitted to be. Further, Juniel barricaded himself inside the apartment and refused to come out when ordered to do so several times by police. This resulted in the SWAT team being called out and the evacuation of adjacent apartments within the complex. The evidence, construed in the light most favorable to the State, reflects that Juniel, who was thought to be armed, made several threats to Woodard's life while he was barricaded in her apartment. Thus, the police could reasonably conclude that Juniel was a danger to himself and others. Juniel had several opportunities to leave the apartment, but he refused to do so. Juniel's continued unlawful occupation of the apartment resulted in the Dayton police department's activation of its SWAT team and evacuation of apartment units adjacent to Woodard's unit.

{¶ 18} Sergeant Anthony Ashley testified that the gas rounds that were fired into Woodard's apartment caused damage to the property. Sgt. Ashley testified that the gas rounds were shot through glass windows and stuck in the walls of the apartment. According to Sgt. Ashley, the substance in the rounds ruins the walls with which it comes into contact. The State adduced evidence which established that the total cost to repair the damaged walls and doors and broken windows in Woodard's apartment was $843.00. State's Exhibit 4.

{¶ 19} Sgt. Ashley further testified that there is an additional expense involved for the individual officers who were called out to the incident, as well as the gas rounds that

were fired into the apartment. Sgt. Ashley testified that the majority of the officers were compensated with overtime pay because they were not on duty at the time of the dispatch. Specifically, the Fairborn Police Department reported its overtime costs as totaling $1,828.34. State's Exhibit 5. The Vandalia Police Department reported its costs for the call-out as totaling $923.05. State's Exhibit 6. The personnel cost for the Huber Heights Police Department was reported as totaling $2,616.20. State's Exhibit 7. Including the costs associated with the damage to Woodard's apartment, the aggregate total of the economic harm suffered as a result of Juniel's offenses was $6,210.59. Thus, the State presented evidence at trial that the call-out to Woodard's residence cost well over $1,000.00, but less than $7,500.00. See *State v. Wills*, 2d Dist. Montgomery No. 25357, 2013-Ohio-4507.

{¶ 20} Accordingly, the evidence was sufficient to prove that Juniel caused the evacuation of surrounding residences by unlawfully occupying Woodard's residence while contemporaneously threatening her through text messages and phone calls, with reckless disregard of the likelihood that his refusal to leave and submit to arrest would cause serious public inconvenience or alarm.

{¶ 21} Juniel's sole assignment of error is overruled.

{¶ 22} Juniel's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Charles M. Blue
Hon. Steven K. Dankof