[Cite as *State v. Smith*, 2024-Ohio-2849.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-10-012 |
| | : | O P I N I O N |
| - vs - | | 7/29/2024 |
| | : | |
| SHERMAN R. SMITH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2022-2047

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Roger W. Kirk, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Sherman R. Smith, appeals his convictions in the Brown County Court of Common Pleas for aggravated murder, murder, attempted aggravated murder, attempted murder, and felonious assault. Each conviction carried with it a mandatory 3-year firearm specification as well as a firearm forfeiture specification.

{¶ 2} Smith and various family members, including his uncles Jay and Ervin

Smith, lived together on a farm in Brown County, Ohio. Smith, in his mid-sixties at that time, claims to have been sexually abused by Jay and Ervin as a child.

{¶ 3} One day, after Smith and Jay had been drinking, Smith asked Jay why Jay had abused Smith. This was not the first time Smith had asked Jay this. Jay, as he had on previous occasions, denied that he ever abused Smith. After this denial, however, Smith walked across the yard, went to his room, retrieved a revolver pistol as well as some extra ammunition, came back, and shot Jay repeatedly. Smith then proceeded to Ervin's house. Upon seeing Ervin, Smith shot at him but missed. Ervin wrestled the gun away from Smith, at which point Smith grabbed a rock and attempted to hit Ervin with it. Failing at that as well, Smith then retreated to the nearby woods.

{¶ 4} When deputies from the Brown County Sheriff's office later arrived, Smith surrendered to them peacefully. Smith was later given his *Miranda* rights by law enforcement, and he recounted the above events.

{¶ 5} Smith was subsequently indicted, and the case went to trial. At trial, Smith did not contest that he killed Jay and attempted to kill Ervin. Instead, Smith argued the abuse he claimed he suffered at the hands of his uncles and decades of pent-up trauma caused him to "snap." Nonetheless, the jury found Smith guilty of aggravated murder, murder, attempted aggravated murder, attempted murder, and felonious assault. The trial court sentenced Smith to 20 years to life for aggravated murder, an indefinite prison term of 4-6 years for attempted aggravated murder, and three years on each firearm specification. All of these prison terms were run consecutively to each other.

{¶ 6} Further facts will be discussed below.

{¶ 7} Smith raises six assignments of error on appeal. We will address them in the order in which they purportedly occurred.

{¶ 8} FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED TO

[SMITH'S] PREJUDICE WHEN IT DENIED HIS MOTION TO SUPPRESS STATEMENTS.

{¶ 9} Smith first argues that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights prior to speaking with police about the underlying facts of this case because he did not receive his rights in writing, did not sign a waiver, and did not expressly waive his rights.

{¶ 10} After being arrested, Smith was interviewed by Detective Sergeant Carlson at the Brown County Sheriff's office. The following exchange began at the beginning of the interview:

> Carlson: Alright, Mr. Smith. My name is Sergeant Carlson. I'm a detective here at the sheriff's office, alright? I think you know why we're talking?
>
> Smith: Oh yeah.
>
> Carlson: Since we're here, I'm just going to go ahead and read these [*Miranda* rights] to you, okay, just to start off. You have the right to remain silent. Do you understand that?
>
> Smith: Yes, sir.
>
> Carlson: Anything you say can and will be used against you in a court of law. Do you understand that?
>
> Smith: Yes.
>
> Carlson: You have the right to talk to a lawyer and have him present with you while you're being questioned. Do you understand that?
>
> Smith: Yes, sir.
>
> Carlson: If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. Do you understand that?
>
> Smith: Yes, sir.
>
> Carlson: You can decide at any time to exercise these rights, not answer any questions, make any statements. Do you

understand that?

Smith: Yes, sir.

{¶ 11} Smith and Carlson then proceeded to speak for over an hour about the events of that night, the abuse Smith claims to have suffered, and other examples of turmoil within the family. At one point, Smith stated:

> I sacrificed myself to bring all this, all this out . . . It needs to come out . . . I'm here to accept my punishment [be]cause, first of all, number one, I was wrong [to kill Jay] . . . Ask your people, the policemens [sic], guys that checked me in . . . I was calm . . . Actually, it was a big relief. All for me.

This sentiment was expressed by Smith multiple times during this conversation.

{¶ 12} Generally speaking, "*Miranda* rights" are a series of warnings given by police to a suspect and "are intended to protect a suspect from the coercive pressure present during a custodial interrogation" by police. *Cleveland v. Oles*, 2017-Ohio-5834, ¶ 9, citing *Miranda v. Arizona*, 384 U.S. 436, 469 (1966). These warnings are that suspects have the right to remain silent, that their statements may be used against them in court, that they have the right to an attorney before speaking with law enforcement, and that an attorney will be appointed for them if they cannot afford one. *See generally*, *Miranda*. Failure to inform a criminal suspect of their *Miranda* rights can result in their statements being barred from use at trial. *Oles*, at ¶ 9. "The overarching concern when considering the sufficiency of a *Miranda* warning is whether it is given in a manner that effectuates its purpose of reasonably informing a defendant of his rights." *State v. Farris*, 2006-Ohio-3255 ¶ 17.

{¶ 13} Once a suspect has been informed of their rights, the individual may waive those rights. *State v. Lather*, 2006-Ohio-4477 ¶ 7. To be deemed to have waived their *Miranda* rights, the "totality of the circumstances" must show two things. *Id*. First, the waiver must be voluntary in that it was the product of a free and deliberate choice rather

than intimidation, coercion, or deception. *Id.* Second, the waiver must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* As Smith acknowledges, the Ohio Supreme Court previously ruled that written warnings as well as written or express waiver of those warnings are not required to waive *Miranda* rights. *State v. Myers*, 2018-Ohio-1903, ¶ 68.

{¶ 14} Here, Smith was properly informed of his *Miranda* rights because Carlson expressly stated each *Miranda* right to Smith, and Smith expressly acknowledged each. Though the warning was not in writing, it was not required to be. Further, the totality of the circumstances demonstrates that Smith voluntarily waived his *Miranda* rights. After being given the warnings and indicating his understanding, Smith immediately, almost enthusiastically, began to answer Carlson's questions because, in his words, the story behind Smith's actions "need[ed] to come out." Smith professed that his actions, including speaking with Carlson, were an act of sacrifice and an "acceptance of [future] punishment." Ultimately, review of the interview shows Carlson and Smith's entire interaction was a voluntary conversation and not the result of any intimidation, coercion, or deception. Smith makes no argument to the contrary.

{¶ 15} We therefore overrule this assignment of error.

{¶ 16} FOURTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED TO [SMITH'S] PREJUDICE UNDER THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I §16, AS WELL AS THE SIXTH AMENDMENT RIGHT TO JURY TRIAL, IN REFUSING OVER DEFENSE OBJECTION, TO INSTRUCT THE JURY ON THE INFERIOR OFFENSE OF VOLUNTARY MANSLAUGHTER.

{¶ 17} Smith argues that the trial court should have instructed the jury on the

inferior offense of manslaughter because Smith "snapped" when Jay denied abusing Smith. Smith claimed he had decades of psychological and emotional trauma that boiled over at that moment and that caused him to take Jay's life and attempt to take Ervin's.

{¶ 18} Smith testified at his trial.[1] According to Smith, Jay and Ervin had previously denied abusing Smith. When Jay denied abusing Smith immediately before the events that led to his death, Smith testified to experiencing "[h]urt, [and] pain, but . . . wudn't hollerin' . . . [or] screaming [sic]." Smith stated he then walked across the lawn and up the steps to his room, all the while begging God to stop him. He testified that at that point, "I knew I was going over the edge and wudn't [sic] no stopping me, until I put [Jay] in the ground and Ervin in the ground." Smith collected his revolver and extra rounds, walked back to Jay, and killed Jay before then attempting to kill Ervin. When asked, "So you knew with every step what was about to happen, correct?" Smith responded, "Yes, sir." Like Smith stated to Sergent Carlson on the night of his arrest, Smith testified that he knew what he did was wrong, but he felt relief after killing Jay and attempting to kill Ervin.

{¶ 19} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 2015-Ohio-3954, ¶ 240. Refusal to give requested instructions is reviewed for an abuse of discretion. *Id.*

{¶ 20} Under R.C. 2903.01(A), the offense of aggravated murder occurs when one purposely, "and with prior calculation and design, cause[s] the death of another . . . ." In turn, murder is when one "purposely cause[s] the death of another . . . ." R.C. 2903.02(A). "A person acts purposely when it is the person's specific intention to cause a certain

---

1. Smith's testimony at trial was consistent with the statements he made to law enforcement on the night he was arrested. His interview with law enforcement was played during the trial.

result, or, when . . . it is the offender's specific intention to engage in [prohibited] conduct . . . ." R.C. 2901.22(A).

{¶ 21} Manslaughter is an "inferior degree of murder" and is defined as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." *State v. Tucker*, 2012-Ohio-139, ¶ 33 (12th Dist.), R.C. 2903.03(A). "A person acts knowingly . . . when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 22} To determine if an instruction on manslaughter is appropriate, the trial court must conduct a two-step analysis. First, the trial court must determine whether the provocation was sufficient to create sudden passion or rage in the offender. *State v. Thompson*, 2014-Ohio-4751, ¶ 153. If there is sufficient provocation, the trial court must then determine whether the defendant acted under the influence of that sudden passion or rage. *Id.* If either circumstance is unsatisfied, the trial court must refuse to provide an instruction on manslaughter. *Id.* Importantly, the Ohio Supreme Court has held that words by themselves cannot, under most circumstances, create a serious provocation. *Id.* at 158.

{¶ 23} We conclude the trial court did not abuse its discretion in refusing to instruct the jury on voluntary manslaughter because Smith's own testimony shows that neither prong of the manslaughter analysis was met. First, Jay's denial of abusing Smith, mere words, was not a legally sufficient provocation for a manslaughter instruction. In addition, because Jay had previously denied Smith's accusations of abuse, Jay's final denial could not come as any surprise to Smith or be deemed reasonably sufficient to incite Smith into a sudden fit of passion or rage.

{¶ 24} Second, even assuming Jay's denial was a sufficient provocation, Smith's testimony shows he did not act under the influence of passion or rage but with calculation and design. After the denial, Smith, by his own words, did not "scream" or "holler." Smith simply stood up and walked away to retrieve his gun. He knew at that point nothing would stop him until Jay and Ervin were dead. Upon retrieving his gun and extra ammunition, Smith walked back to where Jay was and shot him before walking to Ervin's home and attempting to kill him as well. Having accomplished part of what he set out to do at that moment, Smith felt relief.

{¶ 25} Ultimately, while Smith may have been hurt by Jay's denial, his testimony and actions make it clear that it was Smith's specific intention in that moment to cause the deaths of Jay and Ervin to achieve some level of peace of mind. As a result, we conclude no jury could make a finding of manslaughter under these circumstances, and the trial court did not err in refusing to give the instruction.

{¶ 26} This assignment of error is overruled.

{¶ 27} SECOND ASSIGNMENT OF ERROR: THE STATE COMMITTED PROSECUTORIAL MISCONDUCT AND THE TRIAL COURT ERRED BY NOT SUSTAINING [SMITH'S] OBJECTION AND NOT DECLARING A MISTRIAL WHEN THE STATE IN CLOSING ARGUMENT SHIFTED THE BURDEN OF PROOF TO THE DEFENSE.

{¶ 28} Next, Smith argues the trial court abused its discretion by not declaring a mistrial because the prosecution's attempt to shift the burden of proof with its closing arguments amounted to prosecutorial misconduct.

{¶ 29} During closing arguments at trial, the prosecutor stated, "Ervin Smith wasn't on trial, nor [were other family members]. And if the defense counsel thought [alleged sexual abuse] was an all-important question he certainly could have asked [Ervin] . . .

question[s]. He chose not to." Smith's trial counsel objected to this statement, and after a conversation with counsel, the trial court reiterated to the jury that the prosecution had the burden of proof at trial and not the defense. The jury indicated its understanding of the court's instruction.

{¶ 30} For remarks in closing arguments to be deemed prosecutorial misconduct, the statements must be improper and must be prejudicial to a defendant's substantial rights. *State v. Miller*, 2021-Ohio-162, ¶ 44 (12th Dist.). Stated differently, "a defendant must show that the improper acts were so prejudicial that the outcome of the trial would clearly have been different had those improper acts not occurred." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 42 (12th Dist.). As a result, "[t]he focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Combs*, 2020-Ohio-5397, ¶ 19 (12th Dist.), *Miller*, 2021-Ohio-162 at ¶ 45.

{¶ 31} Importantly, we have consistently held that "[c]urative instructions 'are presumed to be an effective way to remedy errors that occur during trial.'" *State v. Tyree*, 2017-Ohio-4228, ¶ 16 (12th Dist.), quoting *State v. Trzeciak*, 2015-Ohio-2219, ¶ 24 (12th Dist.). The U.S. Supreme Court has observed, "Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed." *Parker v. Randolph*, 442 U.S. 62, 73 (1979), *abrogated on other grounds by Cruz v. New York*, 481 U.S. 186 (1987).

{¶ 32} Here, assuming for the sake of argument the prosecution's remarks were improper, we conclude that they did not affect the outcome of Smith's trial for two reasons. First, the trial court immediately instructed the jury after the prosecutor's statement that Smith had no burden of proof at trial. The jury then indicated it understood this instruction.

Smith presents no arguments on appeal addressing the presumption that the jury followed the trial court's instruction.

{¶ 33} Second, regardless of whether the statement by the prosecutor was made, it is clear the outcome of Smith's trial would not have been different. Smith admitted at trial that he shot and killed Jay and attempted to kill Ervin. As discussed above, the evidence was clear and overwhelming that Smith did so with specific intent and not under the influence of any passion or rage. This remains true regardless of whether Jay and Ervin abused Smith when Smith was a child.

{¶ 34} We overrule this assignment of error.

{¶ 35} FIFTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED TO THE PROJUDICE [sic] OF [SMITH] AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

{¶ 36} SIXTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED TO [SMITH'S] PREJUDICE BECAUSE THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 37} We will address these two assignments of error together. On appeal, Smith argues, similar to his fourth assignment of error, that his convictions should not stand because the evidence presented at trial demonstrated that his actions were influenced by sudden passion or rage.

{¶ 38} To test the sufficiency of the evidence presented at trial, an appellate court "focuses on whether the state met its burden of production . . . " and presented evidence on every element of an offense. *State v. Paul*, 2012-Ohio-3205, ¶ 10 (12th Dist.). However, with a manifest weight of the evidence examination, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the

jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168. As a result, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Smith*, 2022-Ohio-1984, ¶ 55, 58 (12th Dist.), citing *State v. Reeder*, 2021-Ohio-2988, ¶ 31 (12th Dist.).

{¶ 39} For the reasons stated in Smith's fourth assignment of error, we similarly conclude the jury did not lose its way in finding Smith guilty of the charges brought against him. Again, Smith's own testimony demonstrates that his actions after Jay's denial were not indicative of an outburst or fit of emotion, but of a specific intent to cause the deaths of the men he believed assaulted him when he was a child.

{¶ 40} These two assignments of error are overruled.

{¶ 41} THIRD ASSIGNMENT OF ERROR: THE CONSECUTIVE SENTENCES IMPOSED ON [SMITH] BY THE TRIAL COURT ARE NOT SUPPORTED BY THE RECORD.

{¶ 42} Finally, Smith argues the trial court erred because the record did not support imposing consecutive sentences. Smith points to his age (66), health issues, his many years of service in the armed forces, and his long work history for CG&E and Duke Energy. In addition, Smith argues his actions were the result of years of unresolved trauma stemming from the abuse he claims to have suffered.

{¶ 43} Under R.C. 2929.41 and 2929.14, it is presumed that multiple sentences are run concurrently to each other unless the trial court makes specific findings. These findings are that (1) "consecutive service is necessary to protect the public from future crime or to punish the offender" and (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). In addition to these two findings, the

trial court must also find one of the following: (a) the defendant committed a criminal offense while awaiting trial or sentencing (b) the "harm caused by. . . [the] offenses . . . committed [were] so great or unusual that no single prison term . . . adequately reflects the seriousness of the offender's conduct" and (c) the defendant's criminal history makes consecutive sentences "necessary to protect the public . . . ." *Id.* at (C)(4)(a)-(c). An appellate court may modify or vacate a sentence only if it "finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, 2016-Ohio-1002, ¶ 23.

{¶ 44} Here, Smith does not contest that the trial court made the required statutory findings, but argues they were not supported by the record. Put simply, we disagree. The established facts before us are that Smith murdered one of his uncles, attempted to murder another uncle, and conducted these actions in a collected, premeditated manner. Smith never asserted his innocence and never expressed any remorse for his actions. In fact, Smith expressed relief after doing what he did. We therefore determine the evidence in the record supports the trial court's imposition of consecutive sentences for these violent, deadly crimes.

{¶ 45} This assignment of error is overruled.

{¶ 46} In conclusion, we note that no one deserves to suffer what Smith claims he suffered. However, the issue of whether Smith was, in fact, abused by his uncles was not in front of the jury and is not before us today. Even if Smith were abused, his actions represent an unlawful intrusion into the purview of the justice system and its role of determining an individual's guilt and punishment.

{¶ 47} Ultimately, the questions presented on appeal relate solely to whether Smith purposely, and with prior calculation and design, murdered one of his uncles and attempted to murder another. Upon review of the record, we find no issue in the jury

answering that question in the affirmative or with the sentence that was imposed as a result of that finding.

**{¶ 48}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.